UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| MARK WARNE, ) | |
| ) | |
| Movant, ) | Cause No. 2:17CV401-PPS |
| v. ) | |
| ) | Arising from 2:16CR23-PPS |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## OPINION AND ORDER

In this section 2255 petition, Mark Warne challenges his bank fraud conviction claiming he received ineffective assistance of counsel. After the Government responded to his initial arguments, Warne obtained counsel who filed a reply memorandum contending an enhancement was not factually supported, and his defense counsel erred by not recommending placement in a residential drug and alcohol program. None of Warne's arguments have merit.

## Background

Warne was a bank president who stole millions of dollars from his employer. This earned him a ten count indictment for bank fraud in violation of 18 U.S.C. § 1344 and identity theft in violation of 18 U.S.C. § 1028(a)(7). [DE 1.] Warne pleaded guilty to the bank fraud alleged in Count 1, and in exchange for his plea, the Government agreed to dismiss the other counts. [DE 39 at 11-12.]

As part of his plea agreement, Warne agreed that he:

> caused Community State Bank to make loans based upon false and
> fraudulent applications. I submitted loans in the names of

>     Individuals A, B, C, and D in the amounts set out in the Indictment.
>     I did not provide Individuals A, B, C, and D with the funds from
>     these loans and Individual[s] A, B, C, and D were unaware of these
>     loans. I used the proceeds of these loans for my own personal
>     purposes. As President of Community State Bank, I prepared one
>     set of minutes of the Board of Directors meetings that omitted any
>     reference to the loans made to Individuals A, B, C, and D. I
>     prepared the minutes in this way to avoid having the Board of
>     Directors look into the fraudulent loans. I falsified a second set of
>     minutes of the meetings of the Board of Directors and included
>     references to the loans made to Individuals A, B, C and D in these
>     minutes. I provided and caused to be provided this second set of
>     false minutes to auditors with the Federal Deposit Insurance
>     Corporation ("FDIC"). I did so to mislead FDIC auditors into
>     believing these loans were reviewed by the Community State Bank
>     Board of Directors. I did this all between September of 2010 and
>     September of 2015 in the Newton County, which is in the Northern
>     District of Indiana. At all times relevant to the Indictment,
>     Community State Bank was insured by the FDIC.

[DE 9 at 8-9.]

The plea agreement also set forth the agreement between the Government and Warne that his base offense level was 7, and that the offense "substantially jeopardized the safety and soundness of a financial institution, thereby increasing [the] offense level by 4 points, pursuant to United States Sentencing Guideline, Section 2B1.1(b)(16)(B)." [DE 9 at 5.] During the change of plea hearing, I questioned Warne about this, and he agreed that he substantially jeopardized the soundness or safety of a financial institution and that he was subjected to an increase in the offense level because of that. [DE 39 at 10.] Warne also acknowledged in his owns words that the approximately $3.5 million he made in fraudulent loans "had a tremendous impact" on the bank as it was a small state bank. [*Id.* at 24.] Additionally, the plea agreement contained an express waiver of Warne's right to file a section 2255 motion:

2

> I understand that the law gives a convicted person the right to appeal the conviction and the sentence imposed. I also understand that no one can predict the precise sentence that will be imposed, and that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offenses as set forth in this plea agreement. With this understanding and in consideration of the government's entry into this plea agreement, I expressly waive my right to appeal or to contest my conviction and all components of my sentence or the manner in which my conviction or my sentence was determined or imposed, to any Court on any ground other than a claim of ineffective assistance of counsel, including any appeal under Title 18, United States Code, Section 3742 or any post-conviction proceeding, including but not limited to, a proceeding under Title 28, United States Code, Section 2255.

[DE 9 at 6.]

During the change of plea hearing, I asked Warne about this waiver of appeal, and he agreed that he understood the concept and approved of it knowingly and voluntarily. [DE 39 at 13-15.] Warne further testified during the hearing, that he was fully satisfied with the advice and the representation of counsel that he received. [DE 39 at 4.] I accepted the plea of guilty. [DE 13.]

Prior to the sentencing, the Government filed a memorandum which argued for a lower loss amount than that called for in the Presentence Investigation Report. [DE 24.] The PSR established that Warne obtained slightly over $6,000,000 in fraudulent loans over a period of 5 years. [DE 24 at 2.] Defense counsel agreed with the Government's favorable position, which calculated a lower loss as the amount of fraudulent loans minus the amount of money that Warne paid the bank for those loans. [DE 24.] I applied the lower loss amount at sentencing, which was between $1,500,000 and $3,500,000. [DE 31 at 5.]

3

At the sentencing hearing, defense counsel presented the testimony of six witnesses and argued the sentence should be mitigated due to Warne's community involvement, dedication to family, and lack of criminal history. [DE 31 at 14-23.] The Government presented aggravating facts, including testimony from the current bank president, who explained that the bank was crucial to the lives of many in the community (Brook, Indiana only had a population of 1,000 people), and how Warne's actions "had a severe impact [on] the safety and soundness" of the bank. [*Id.* at 9.] Many of the shareholders of the bank were retired farmers, teachers, and business owners, and the losses suffered by the bank due to the fraud led to a reduction in the book value of the stock of a little over 17 percent. [*Id.* at 10.]

Ultimately, I sentenced Warne to seventy-eight months imprisonment. [DE 26.] I also ordered supervised release in the amount of 2 years. *Id.* I then dismissed the remaining counts and issued a final judgment on October 20, 2016. [DE 27, 30.] Warne did not file a direct appeal.

Warne, acting *pro se*, timely filed his section 2255 motion and memorandum in support arguing that his counsel was ineffective because Warne did not fully understand the consequences of his plea, his counsel did not vigorously represent Warne at sentencing, and his counsel should have recognized the need for an expert. [DE 33.] The Government filed a response addressing these arguments. [DE 42].

A few months later, attorney Visvaldis Kupsis appeared on behalf of Warne. [DE 45.] After receiving extensions of time, Kupsis filed a reply memorandum making the following two arguments: (1) there existed insufficient facts to support the four level

4

enhancement under USSG §2B1.1(16)(B), and defense counsel's failure to object to the same constituted ineffective assistance of counsel; and (2) counsel improperly advised Warne that he would not be eligible for a residential drug and alcohol treatment program and failed to request a recommendation from the Court for placement in the program. [DE 51.] I ordered the Government to respond to the arguments presented in the reply, and the Government filed a sur-reply [DE 54]. Therefore, this matter is fully briefed and ripe for adjudication.

## Discussion

Habeas corpus relief under 28 U.S.C. section 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). In order to proceed on a habeas corpus petition pursuant to section 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *Id.*

Only two claims under section 2255 are available in the Seventh Circuit to a person who waived the right to appeal and to bring a collateral attack: (1) the defendant received ineffective counsel regarding the waiver (or the plea agreement as a whole) and its negotiation, *United States v. Smith*, 759 F.3d 702, 707 (7th Cir. 2014); or (2) the waiver was not knowingly or voluntarily made. *Mason v. United States*, 211 F.3d 1065, 1068 (7th Cir. 2000).

**Claims Set Forth in Warne's Original Section 2255 Motion**

I'll start with the claims Warne made *pro se* before Mr. Kupsis filed his appearance in this case. Warne first contends that as a result of his counsel's ineffective assistance, he did not fully understand the consequences of his decision to plea. [DE 33 at 8.] This is a tough one to swallow in light of the repeated statements Warne made under oath at the change of plea hearing, as well as the written change of plea that he signed.

Any ineffective assistance of counsel claim is governed by the 2-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail, Warne must first show the specific acts or omissions of his attorney "fell below an objective standard of reasonableness" and were "outside the wide range of professionally competent assistance" and second, he must show prejudice, which entails showing by "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 690, 694; *see also Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993). There is a "strong presumption" that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

To establish the prejudice element for claims of ineffectiveness in the plea process, Warne would have to prove that: (1) because of his attorney's ineffective assistance, he misunderstood the consequences of his plea agreement, and (2) he would not have pled guilty absent that misunderstanding. *Thompson v. United States*, 732 F.3d

6

826 (7th Cir. 2013). In other words, Warne would not have pleaded guilty "but for" the attorney's mistakes. *United States v. Carroll*, 412 F.3d 787, 793 (7th Cir. 2005).

Although Warne now claims his attorney did not counsel or advise him about the nature and elements of the charges [DE 33 at 8], Warne's plea agreement states he believed his "lawyer has done all that anyone could do to counsel and assist [him], and that [Warne] now understand[s] the proceedings in this case against me." [DE 9 at 9.] For starters, during the plea hearing, I went over the elements of the offense with Warne and asked him if he understood them. He said that he did. [DE 39 at 21-22.] Additionally, during the plea colloquy, Warne agreed that he was satisfied with his counsel, and that he had an opportunity to go over his plea agreement with counsel. [*Id.* at 4.] These sworn statements are entitled to a "presumption of verity." *United States v. Gasich*, No. 2:14-cr-63, 2016 WL 3671148, at *3 (N.D. Ind. July 11, 2016) (quoting *United States v. Loutos*, 383 F.3d 615, 619 (7th Cir. 2004)). To the extent Warne is now claiming his plea was not knowingly and voluntarily made, "[s]elf-serving statements offered after the plea hearing generally fall in the face of contradictory voluntary statements made by the defendant during a plea hearing – the latter are presumed true." *United States v. Mosley*, 35 F.3d 569 (Table), 1994 WL 503016, at *3 (7th Cir. 1994).

It is certainly true that Federal Rule of Criminal Procedure 11 requires that a defendant's guilty plea be voluntary and knowingly made. In looking at the totality of the circumstances, as I must, there is no question that Warne's guilty plea was made knowingly and voluntarily. *See Loutos*, 383 F.3d at 619; *United States v. Ellison*, 835 F.2d

7

687, 693 (7th Cir. 1987) (the "whole point of the plea proceeding (the Rule 11 colloquy) is to establish that the plea was knowingly and voluntarily made.").

As the former president of a bank, Warne is clearly a well-educated and sophisticated businessman. During my lengthy discussion with him, he gave no indication whatsoever that he did not understand the plea proceeding or the consequences of what he was doing. Based upon the plain language of the plea agreement and the lengthy plea colloquy I held with Warne, I find that he made a knowing and voluntary plea. As the Seventh Circuit has stated, "[j]ustice would be ill-served, and the utility of the Rule 11 colloquy would be undermined, by allowing [the defendant] to renege on his representation under oath to the district court." *Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010); *see also Berkey v. United States*, 318 F.3d 768 (7th Cir. 2003) (rejecting ineffective assistance claim where, despite defendant's contrary arguments, his statements at the plea colloquy confirmed he understood the sentencing process and his potential sentences, and no promises were made to induce his plea).

Warne implies that his attorney was ineffective because during a meeting with the FDIC in October, before Warne was even indicted, the attorney allegedly did not protect Warne from making incriminating statements and his counsel described Warne's actions as a "Ponzi scheme." [DE 33 at 11.] But I don't see how this relates to Warne's decision to plead guilty in this case. The evidence had already been amassed against Warne. They obviously had the goods on him. The fact that his counsel recognized that fact and articulated it out loud is hardly surprising. More importantly,

8

Warne has done nothing to show that his counsel's actions resulted in any prejudice - or that he would not have pleaded guilty but for the attorney's supposed errors. In fact, even now, Warne does not request to withdraw his plea, rather, he asks that "his sentence be set aside and Warne be appointed counsel to revisit the plea phase and sentencing to address the issues" raised by his motion. [DE 33 at 14-15.]

Warne also faults his attorney for not vigorously representing him during the sentencing phase. Where counsel's alleged error occurred during the sentencing phase, the petitioner has to show there was "a reasonable probability that he received additional prison time because of counsel's error." *Glover v. United States*, 531 U.S. 198 (2001).

Warne points out that his attorney did not file a sentencing memorandum on his behalf or an objection to the Government's memorandum, but this is not eyebrow raising, as the Government's memorandum argued for a *lower* loss amount than that established in the PSR. [DE 24.] Warne claims that his attorney offered nothing on his behalf at sentencing, contending "[a]ll he did was recite poetry!" [DE 33 at 12.] But this is inaccurate. Counsel called six witnesses to the stand who all made compelling arguments on Warne's behalf. They spoke about his integrity, loving family, volunteering, leadership qualities, coaching, community involvement, and his remorse. [DE 31 at 14-28.] Warne's attorney also made his own argument to the court, highlighting the lack of criminal record, his community involvement, the loss of his reputation, and his financial destruction. [*Id.* at 28-32.] Counsel noted Warne's cooperation and that "when this matter was discovered, Mark immediately, at the bank,

9

admitted his fault and signed a statement admitting his fault. That was done without the benefit of counsel." [*Id.* at 32.] He also detailed Warne's turning over of assets for restitution, including selling his family home, surrendering his car, farm equipment, and other assets. [*Id.* at 32-34.] Counsel also discussed the deterrent value in sentencing Warne, and requested a below-Guideline sentence. [*Id.* at 35-36.] While it is true that counsel recited a short poem, he did much more than that, and I cannot say that his performance was constitutionally deficient or that Warne was prejudiced by it.

The last argument Warne advances in his petition is that his counsel was ineffective because he failed to hire an expert and, given the complexity of the bank regulatory environment, he should have recognized the need for an expert. [DE 33 at 13.] Warne claims he needed "outside expertise to effectively challenge the evidentiary value of the FDIC's findings," but other than this speculation, he does not state how this would have affected his decision to plead guilty, or what any expert would have revealed that would have changed his sentence.

**Claims Set Forth in Warne's Reply Memorandum**

After the Government filed a response to the arguments advanced by Warne *pro se* in his section 2255 motion, Warne obtained counsel, who then filed what he titled "Defendant's Memorandum in Response," but which was really a reply in support of his motion. Two arguments are set forth in the reply by his new counsel: first, insufficient facts existed to support a four level enhancement under U.S.S.G. §2B1.1(16)(B) and defense counsel's failure to object to the enhancement constituted ineffective assistance of counsel; and second, that defense counsel improperly advised

Warne that he was not eligible for a residential drug and alcohol treatment program and failed to request a recommendation from the court for placement in the program.

Timeliness is an issue with these claims set forth in Warne's reply. Section 2255 has a one-year limitation period. 28 U.S.C. § 2255(f). When a petitioner files his motion, he must state all available grounds for relief and the facts supporting those claims. Section 2255 Proceeding Rule 2(b). Amendments to a section 2255 motion may be made once as a matter of course before the responsive pleading is served. *Mayle v. Felix*, 545 U.S. 644, 655 (2005). But in this case, Warne filed his reply after the Government had already responded to his initial arguments. A petitioner may amend his motion with leave of court, but Warne did not request leave. Fed. R. Civ. P. 15(a)(2). If the statute of limitations has run, the amendment may relate back to the time of the original motion, but only if the supplemental claims arise out of the same "conduct, transaction or occurrence." Fed. R. Civ. P. 15(c)(1)(B).

There is an argument that the new "substantial jeopardy" enhancement claim relates back to the claims in the original motion. While Warne did not specifically refer to the four level enhancement under U.S.S.G. 2B1.1(b)(16)(B) in his original motion or memorandum, Warne did argue that his defense attorney was ineffective because he "did not put forth any argument in rebuttal for the enhancements" and that he should have hired an expert to testify at sentencing. [DE 33 at 13-14.] However, even assuming that this claim relates back and is timely, it still fails on the merits. In his plea agreement, Warne agreed that "[t]he offense substantially jeopardized the safety and soundness of a financial institution, thereby increasing my offense level by 4 points,

11

pursuant to United States Sentencing Guideline, Section 2B1.1(b)(16)(B)" and when I questioned him about it during his plea colloquy, Warne agreed that he jeopardized the soundness or safety of the institution. [DE 9 at 5; DE 39 at 10.] Because Warne agreed to this in his plea, I can't say that his counsel's failure to object at the sentencing hearing was error.

Moreover, there was substantial evidence in the record for me to find that this enhancement applied. Warne points me to the sentencing guidelines application notes that provide a list of factors to consider in determining whether the safety and soundness of a financial institution was substantially justified including that:

    (i)    the financial institution became insolvent;

    (ii)    the financial institution substantially reduced benefits to pensioners or insured;

    (iii)    the financial institution was unable on demand to refund fully any deposit, payment, or investment;

    (iv)    the financial institution was so depleted of its assets as to be forced to merge with another institution in order to continue active operation;

    (v)    one or more of the criteria and clauses i-iv was likely to result from the offense but did not result from the offense because of federal government intervention, such as bailout.

U.S. SENTENCING GUIDELINES MANUAL § 2B1.1(b)(16)(B) cmt. n. 13(A) (2016). He argues that none of these enumerated events occurred, including there was no federal bailout. Because the bank losses led to a reduction in the book value of the stock of a little more than 17 percent and one dividend was unable to be paid to the shareholders, I think it is possible that both subsections (ii) and (iii) in the comment apply. [DE 31 at

12

10-11.] However, regardless, the Guidelines specifically state that these factors are "non-exhaustive." § 2B1.1(b)(16)(B) cmt. n. 13(A). Thus, I can consider other factors as well in determining whether the bank's safety and soundness was jeopardized.

Here, the current bank president testified at the sentencing hearing that the 42 fraudulent loans had a severe impact on the safety and soundness of his institution. [DE 31 at 9-10.] It led to charge-offs of over $5.1 million and a reduction in total assets of just over 8 percent. [*Id.* at 10.] There was a reduction in net worth for the 192 shareholders (mostly community members), and in 2015 the bank was unable to pay a dividend to the shareholders. [*Id.* at 10-11.] Local customers could have lost their homes and/or businesses due to the actions of Warne. [*Id.* at 11.] Warne admitted in his own words that because it was a small bank, the fraudulent loans "had a tremendous impact on them." [DE 39 at 24.] Here, given the huge amount of money that Warne took from the bank and the small size of the financial institution, the enhancement for jeopardizing the soundness of a financial institution was proper. *See, e.g., United States v. Simmerman*, 850 F.3d 829, 833-35 (6th Cir. 2017) (noting the list of factors is "non-exhaustive" and finding even though the small credit union did not become financially insolvent and there was no government bailout, the enhancement was appropriate where the net worth ratio fell and it was critically undercapitalized).

Last, Warne contends that he was diagnosed with depression and anxiety which led to him using medication to sleep, and his counsel provided ineffective assistance of counsel because he did not recommend the residential substance abuse program or ask the court for a recommendation in the program. [DE 51 at 5-7.] This claim does not

13

seem to be related at all to the claims set forth in the initial section 2255 motion, and thus is time barred. But even if it was timely, it would still fail.

I must grant a section 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. However, "[h]abeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations." *Prewitt*, 83 F.3d at 816. "Relief under § 2255 is available only for errors of constitutional or jurisdictional magnitude, or where the error represents a fundamental defect which inherently results in a complete miscarriage of justice." *Kelly v. United States*, 29 F.3d 1107, 1112 (7th Cir. 1994) (overruled on other grounds) (quotations omitted). Here, I cannot say the failure to recommend placement in a residential substance abuse program rises to the level of a constitutional error. Moreover, Warne submitted to an interview by a probation officer on May 10, 2016, with his attorney present, and during that interview, Warne reported no mental or substance abuse issues. [DE 18 ¶¶ 53, 54.] Finally, only the Bureau of Prisons has the authority to admit offenders into the residential substance abuse program. While a recommendation from the court could be helpful, it is not determinable, thus Warne cannot show that he suffered any prejudice from not receiving a court recommendation.

Finally, pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a defendant must show that "reasonable

jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 475 (U.S. 2000) (internal quotation marks and citation omitted).

For the reasons set forth above, Warne has not stated any grounds for relief under section 2255. The Court finds no basis for a determination that reasonable jurists would find this decision debatable or incorrect or that the issues deserve encouragement to proceed further. Therefore, a certificate of appealability will not be issued.

## Conclusion

For the reasons set for above, the section 2255 motion [DE 32] is DENIED and DISMISSED WITH PREJUDICE. The Clerk shall enter final judgment accordingly. Additionally, the Motion to Appoint Counsel [DE 35] is DENIED AS MOOT. Finally, the motion for in forma pauperis application [DE 37] is DENIED AS MOOT because there is no filing fee for section 2255 motions.

**SO ORDERED**.

ENTERED: December 18, 2018

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT